# KRUH *v.* THOMAS.

---

PATENTS; INTERFERENCE; DISCLOSURE; APPEAL AND ERROR; SPECIFICATION AND CLAIMS.

1. In an interference in which is involved the question whether the prior application of one of the parties disclosed the invention of the issue, it will be assumed that the tribunals of the Patent Office considered all of the figures of a drawing attached to the application, although they seem to have based their opinion on some only of the figures.

2. In an interference involving a highly technical invention, and in which this court does not have the benefit of the testimony of witnesses highly skilled in the art, it will not reverse the unanimous decisions of the Patent Office, unless it is clearly apparent that error has been committed.

3. Where the issue of an interference called for a plurality of positive electrodes, and was not limited to the number shown in the applications of the parties, it was *held* that the application of one of the parties, which showed a device containing two primary and two secondary electrodes, the inductances, however, being in only the secondary leads, disclosed the invention of the issue.

4. Where one of the counts of an interference called for "an inductance introduced into each of the leads of the positive electrodes," it was *held* that an application of one of the parties which placed inductances in the leads to the secondary, and not to the primary positive electrodes, did not disclose the invention of the issue.

No. 745. Patent Appeals. Submitted January 10, 1912. Decided March 4, 1912.

HEARING on an appeal from a decision of the Commissioner of Patents in an interference case.

*Affirmed in part and reversed in part.*

Vol. XXXVIII.—22.

*Mr. Albert G. Davis* and *Mr. Charles McClair* for the appellant.

*Mr. Charles A. Terry* for the appellee.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

This is an appeal by Osias O. Kruh, from a decision of the Commissioner of Patents in an interference proceeding.

The invention in issue, in the words of the primary examiner, "belongs to that class of mercury rectifiers which utilize an inductance to maintain continuity of flow over the zero point of the supply, in order to prevent extinguishment of the apparatus. According to this invention the inductance is placed in the leads to the positive electrodes." In each of the applications the device is shown to contain two positive electrodes, or anodes, in the leads of each of which are placed the inductances and one negative electrode, or cathode, although in appellant's device there is also added a starting positive electrode in the lead to which there is no inductance.

The issue is embraced in five counts, which are as follows:

"1. In a system of electrical distribution, a source of single-phase alternating current, a direct current work circuit supplied therefrom, an interposed vapor converter having suit-able negative electrode and a plurality of positive electrodes, and an inductance introduced into each of the leads of the positive electrodes to maintain the converter in operative condition.

"2. In a system of electrical distribution wherein a vapor converter is employed in connection with a source of single-phase alternating current, and a direct current work circuit is supplied through the vapor converter, a negative electrode in the converter and a plurality of positive electrodes, and energy-storing devices in the leads to the positive electrodes whereby the converter is maintained in operative condition.

"3. The combination with a source of single-phase current and a work circuit supplied thereby, of a vapor converter un-

able of itself to maintain operation over the zero point of the supply, unless means are provided for carrying it over the natural zero point, a plurality of positive electrodes and a negative electrode in the said converter and energy storing devices in the leads to the positive electrodes for preventing the extinguishment of the converter at the zero point.

"4. In a system of electrical distribution, a source of alternating current, a direct current work circuit supplied therefrom, an interposed vapor converter having a suitable negative electrode and a plurality of positive electrodes and an inductance introduced into each of the leads to a plurality of the positive electrodes for the purpose of maintaining the converter in operative condition.

"5. In a system of electrical distribution, a source of alternating current, a direct current work circuit supplied therefrom, an interposed vapor converter and a positive electrode therefor, and an energy—storing device in the lead thereto for the purpose of maintaining the converter in operative condition."

Appellant's application was filed February 20, 1904, and appellee's July 6, 1904. Both parties rely for evidence of conception and disclosure and for a constructive reduction to practice upon prior applications filed by them respectively. That depended upon by appellant, filed December 12, 1903, shows in figure 5 a device consisting of two primary and two secondary positive electrodes. The two primary electrodes derive their current direct from the source of current supply. No inductances are placed in their leads. The apparatus is kept alive by means of the secondary electrodes, which are supplied with a part of the current which has passed from the primary positive electrodes through the appartus and the negative electrode to the negative lead. In this lead is placed an inductance. Speaking of the operation of this device, appellant, in his application, says: "I have found, however, that one of the anodes, and that one which carries the small current for the purpose of maintaining the other or main anode in operation, may be supplied with current derived solely by

an inductive discharge from the energy-storing device traversed by current passing through the main anode."

Whether or not the flow of current to a positive electrode through an inductance placed in the negative lead causes a different operation and result from that obtained through an inductance placed in the positive lead alone, we regard as an exceedingly close question. The tribunals below were unanimous in holding that appellant's earlier application failed to disclose the invention here in issue. It is true that they seem to base their opinion upon figures 1 and 2; but we must assume, however, that, having the whole application before them, figure 5 was also given due consideration, if that figure was brought to their attention. In a case like the present, involving an invention so highly technical, where we are unable to have the benefit of the testimony of witnesses skilled in the art, we are unwilling to overturn the unanimous decisions of the experts of the Patent Office, who are more competent to pass upon questions of his nature, unless it is clearly apparent that error has been committed.

We come now to the consideration of appellee's earlier application, filed December 24, 1903. All of the tribunals below united in holding that this application disclosed the subject-matter of counts 2 to 5, inclusive. There seems to be no doubt of the correctness of this conclusion. Appellee there shows a device containing two primary and two secondary electrodes, the inductances, however, being in only the secondary leads. The issue merely calls for a "plurality of positive electrodes," and is not limited to the number shown in the applications involved in this interference. Neither do counts 2 to 5, inclusive, call for a separate inductance for each positive lead, but merely for an "inductance introduced into each of the leads to a plurality of the positive electrodes." This, appellee undoubtedly discloses in his 1903 application.

Whether the elements of count 1 can also be read on to this application presents a question of greater difficulty. The Primary Examiner and the Board of Examiners in Chief decided this question in favor of appellant, but this decision

was reversed on appeal to the Commissioner. Count 1 calls for "an inductance introduced into each of the leads of the positive electrodes." As we have seen, appellee only placed inductances in the leads to the secondary, and not to the primary, positive electrodes. We must agree with the primary examiner and the Board of Examiners in Chief that count 1 is specific, and that a fair construction requires that there shall be an inductance in each of the positive leads, a mere plurality of inductances not being sufficient. Appellee, however, contends that appellant, in his application here in interference, shows one positive electrode containing no inductance in its lead, and that if this count is so construed as to read upon that device, as it must be, then it can be read equally well upon the disclosure in his 1903 application. This electrode, however, is not used for the purpose of operating the apparatus, but is merely for the purpose of starting it, being switched off when the other positive electrodes become active.

The two lower tribunals of the Patent Office also held that, although appellee produced evidence of conception of the subject-matter of count 1 prior to appellant, yet being the last to reduce to practice, and lacking in diligence, he was not entitled to priority. With this conclusion also, we must agree.

The decision of the Commissioner of Patents is affirmed as to counts 2, 3, 4, and 5, and reversed as to count 1. The clerk is directed to certify these proceedings as required by law.

*Affirmed in part and reversed in part.*